UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRANDE COSMETICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-06440 (RMD)(SEC) |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A", | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

83425561v.2

Plaintiff Grande Cosmetics, LLC ("Grande" of "Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "Motion for TRO").

**I.   INTRODUCTION**

Grande is requesting temporary *ex parte* relief in this action for trademark infringement, counterfeiting, and false designation of origin against the partnerships and unincorporated associations identified on Schedule A to Grande's Amended Complaint (collectively, "Defendants"). As alleged in the Amended Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and/or selling unauthorized and unlicensed cosmetics and related beauty products using counterfeit versions of Grande's federally registered GRANDE COSMETICS, GRANDELASH, GRANDELASH-MD, and G (stylized) Logo trademarks (collectively, the "Counterfeit Grande Products"). Defendants operate e-commerce stores, identified by anonymous seller aliases, some of which are identified in Schedule A to the Complaint and the Amended Complaint (collectively, "Seller Aliases").

Defendants run a sophisticated counterfeiting operation. They target sales to Illinois residents by creating and operating e-commerce stores using one or more Seller Aliases. Illinois residents can purchase, and have purchased, Counterfeit Grande Products through these e-commerce stores, which share unique identifiers that establish a logical relationship among them. Further, Defendants attempt to avoid (or at least mitigate) liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting scheme. Grande filed this lawsuit to combat Defendants' counterfeiting, as well as to protect unwitting consumers from purchasing Counterfeit Grande Products over the Internet.

1

Defendants' ongoing violations of the law should be restrained, and Grande respectfully requests that this Court issue a Temporary Restraining Order *ex parte*.

## II. STATEMENT OF FACTS

### A. Grande's Products and Trademarks

Since its founding, which began with a single GRANDELASH product, Grande has grown into a well-known source for high quality cosmetics and related beauty products. *See* Declaration of Frank Grande, (the "Grande Decl.") at ¶ 3. Grande has been using the GRANDE COSMETICS, GRANDELASH, GRANDELASH-MD, and G (stylized) Logo marks (collectively, the "Grande Trademarks") to market and sell cosmetics and related beauty products for over a decade. *Id*. at ¶ 4. Grande has been an internationally recognized manufacturer, distributor, and retailer of cosmetics and other related beauty products, all of which prominently display its famous, internationally recognized, and federally registered trademarks, including the Grande Trademarks (collectively, the "Grande Products"). *Id*. at ¶ 5. The Grande Products have become enormously popular and immediately recognizable, driven by Grande's high standards for safety, quality and innovative design. *Id*. The Grande Products are distributed and sold to consumers through Sephora and Ulta retail stores, authorized salons, and spas, as well as online at grandecosmetics.com and through authorized online retailers such as amazon.com. *Id*. Grande expends millions of dollars annually in promoting and marketing featuring the Grande Trademarks. *Id* at ¶ 8. These sales efforts have paid off—sales under the Grande Trademarks since 2009 have exceeded $100 million. *Id*.

As a result of its longstanding and exclusive use, Grande owns nationwide common-law rights in its Grande Trademarks. *Id.* at ¶ 6. Grande also owns federally registered trademarks for the Grande Marks, U.S. Trademark Registration Nos. 5185017, 5264467, 5679199, and 6058356.

*Id*. The Grande Trademarks are distinctive when applied to the Grande Products, signifying to consumers that the products come from Grande and meet Grande's standards for quality and safety. *Id.* at ¶ 9. The Grande Products are often applied directly to user's eyelids just above the upper lash. *Id*. Due in part to the sensitive area where its products are applied, Grande maintains strict safety standards and quality control of all of its Grande Products, all of which are subject to these standards prior to distribution and sale. *Id.* The value to Grande of the goodwill associated with the Grande Trademarks is incalculable. *Id.*

      **B.**    **Defendants' Unlawful Conduct**

The success of the Grande Trademarks has resulted in significant counterfeiting. Counterfeiting through marketplace listing on platforms such as eBay, Alibaba, AliExpress, and Mercari is rampant. *Id.* at ¶ 10. Grande has identified numerous interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Grande Products to consumers in this Judicial District and throughout the United States. *Id.* Grande has established a logical relationship among the Defendants through its evidence of similarities among the e-commerce stores operating under the Seller Aliases, the Counterfeit Grande Products being offered for sale and sold through those stores, and common tactics employed by Defendants to evade enforcement efforts. *Id.* at ¶¶ 11-13. If Defendants provide additional credible information regarding their identities, then Grande will take appropriate steps to further amend its Amended Complaint.

**III.**    **ARGUMENT**

Defendants' intentional, purposeful, and unlawful conduct is causing and will continue to cause irreparable harm to Grande's reputation and the goodwill associated with the Grande Trademarks. Under Federal Rule of Civil Procedure 65(b), this Court may issue an *ex parte* TRO

where the applicant will suffer immediate and irreparable injury, loss, or damage before the adverse party or its counsel can be heard in opposition. Fed. R. Civ. P. 65(b). Here, the Court should enter a TRO because it would immediately stop the Defendants from benefitting from their wrongful use of the Grande Trademarks and preserve the status quo until a hearing can be held.

Unless a TRO is granted *ex parte*, Defendants can and likely will register new e-commerce stores under new aliases and move their assets to offshore bank accounts that are outside this Court's jurisdiction. *See* Declaration of Matthew T. Furton (the "Furton Declaration"), ¶¶ 5, 6. Courts regularly recognize that civil actions against counterfeiters present special challenges that justify *ex parte* proceedings. *See, e.g., Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (stating that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers").

A. **Standard for Temporary Restraining Order**

A party seeking a TRO must demonstrate that (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the relief is not granted. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (explaining standard for granting a preliminary injunction); *Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 01 C 0905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (stating that the standard for granting a TRO is identical to the standard for granting a preliminary injunction).

If the Court is satisfied that the party seeking relief has met these conditions, then the Court must consider the harm to the non-moving party if preliminary relief is granted, balancing that harm against the irreparable harm the moving party will suffer if relief is denied. *Ty*, 237 F.3d at 895. Finally, the Court must consider how granting or denying the injunction will affect the public interest. *Id.* The Court must then weigh all of these factors, "sitting as would a chancellor in

equity." *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). In doing so, the Court should use a "sliding scale approach," such that the higher the plaintiff's likelihood to succeed on the merits, the less the balance of harms needs to weigh in the plaintiff's favor. *Id.*

### B. Grande Is Very Likely to Succeed on the Merits

Under the Lanham Act, a defendant is liable for trademark infringement and counterfeiting if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prevail on each of its claims, Grande must demonstrate: that: (1) its marks are protected under the Lanham Act, and (2) the challenged marks are likely to cause consumer confusion. *See, e.g.*, *Barbecue Marx, Inc. v. 551 Ogden Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).

Grande owns the federally registered and inherently distinctive Grande Trademarks. Grande Decl. at ¶ 6. The registrations for the Grande Trademarks are valid, subsisting, and in full force and effect, and constitute *prima facie* evidence of their validity and of Grande's exclusive right to use the Grande Trademarks. *Id.* at ¶ 7; 15 U.S.C. § 1057(b). Defendants and their e-commerce stores do not conduct business with Grande and have no right or authority to use the Grande Trademarks for any reason. Grande Decl. at ¶ 11. Thus, Grande satisfies the first element of its Lanham Act claims.

As to the second element, the Seventh Circuit presumes a likelihood of confusion where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product." *Microsoft Corp v. Rechanik*, 249 Fed. App'x 476, 479 (7th Cir.

5

2007). Defendants' Counterfeit Grande Products are element-for-element copies of genuine Grande Products. The spurious packaging is nearly identical to Grande's genuine packaging and Defendants' knock-off products feature counterfeit versions of the Grande Trademarks. Accordingly, this Court can presume a likelihood of confusion from Defendants' use of the Grande Trademarks.

Even if the Court were to move past the presumption to analyze the likelihood of confusion factors, the result is the same. The Seventh Circuit looks to seven enumerated factors to determine whether a likelihood of confusion exists: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as those of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). While no one factor is dispositive, the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Grande has proffered evidence that Defendants are offering for sale and selling identical cosmetic products with packing that is nearly identical to Grande's packaging and are using infringing and counterfeit marks identical to the Grande Trademarks. Both Grande and Defendants advertise and sell their respective products on the Internet, and target consumers looking for genuine Grande Products. Grande Decl. at ¶¶ 5, 11.

Those diverse consumers have varying degrees of sophistication, such that many—if not all—of them are likely to have difficulty distinguishing between Counterfeit Grande Products and genuine Grande Products, especially since Defendants use Grande's marketing materials to promote their counterfeit wares. Moreover, Defendants want to trick customers looking for genuine Grande Products into purchasing Counterfeit Grande Products by using the Grande

83425561v.2

Trademarks and marketing materials showing genuine Grande Products to sell the Counterfeit Grande Products. *Id.* at ¶ 11. Defendants' deception has been successful, as Grande has been forced to respond to complaints from customers who have tricked into purchasing Counterfeit Grande Products thinking those spurious goods were genuine. *Id.* at ¶ 16; *see, e.g., Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) ("[T]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.").

Accordingly, Grande is likely to succeed on the merits of its claims for trademark infringement, counterfeiting, and false designation of origin.

### C. There Is No Adequate Remedy at Law, and Grande Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citation omitted). Where confusion is highly probable, irreparable injury "almost inevitably follows" because such injury "may not be fully compensable in damages." *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Might Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). Thus, monetary damages are inadequate to compensate for this harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Here, Defendants' unauthorized use of the Grande Trademarks causes ongoing irreparable harm to Grande through diminished goodwill and brand confidence, damage to Grande's reputation, loss of exclusivity, and loss of future sales. Grande Decl. at ¶¶ 15-18. Both the harm to Grande's reputation and associated goodwill and the potential diversion of customers due to loss

in brand confidence are incalculable as well as irreparable, thus necessitating an immediate injunction against Defendants' infringing activities. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to the plaintiff's goodwill constituted irreparable harm for which there was no adequate remedy at law). Grande will continue suffering irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Grande Decl. at ¶¶ 15-19.

### D. The Balance of Harms Weighs in Grande's Favor, and an Injunction will Serve the Public's Interest

Just as the likelihood of success on the merits, the lack of adequate remedy at law, and the threat of irreparable harm all weigh in favor of injunctive relief, so too does the balance of harms. Defendants—as willful infringers—are entitled to little equitable weight. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Courts do so because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Thus, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996). In this case, Defendants have profited and continue to profit from the sale of Counterfeit Grande Products; therefore, the balance of harms weighs strongly in Grande's favor.

As to the public interest, Defendants are in the business of giving the public a false impression that Defendants are operating their e-commerce stores with Grande's approval and endorsement. Moreover, because the Counterfeit Grande Products are not subject to Grande's

8

stringent safety and quality control standards, continued sale of those products puts the public at risk. Thus, an injunction that halts the sale of the dangerous Counterfeit Grande Products and dispels the public confusion created by Defendant's actions is squarely in the public interest.

## III.  GRANDE'S REQUESTED EQUITABLE RELIEF IS APPROPRIATE

The Lanham Act provides for injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . ." 15 U.S.C. § 1116(a).

### A.  A TRO Immediately Enjoining Defendants' Unlawful Use of the Grande Trademarks is Appropriate

Grande requests a temporary injunction requiring Defendants to immediately cease all use of the Grande Trademarks (or any confusingly similar mark) on or in connection with all e-commerce stores operating under any of the Seller Aliases. This relief is required to stop the ongoing harm to Grande's goodwill associated with the Grande Trademarks and the ongoing harm to consumers, and to prevent Defendants from continuing to profit from their unauthorized use of the Grade Trademarks. Defendants' anonymous operation over the Internet in a global economy magnifies the need for *ex parte* relief. Grande currently is unaware of the Defendants' true identities and locations. Many courts have authorized immediate injunctive relief in similar cases involving counterfeiting and otherwise unauthorized use of trademarks. *See, e.g., Monster Energy Corp. v. Zuichudeseca*, No. 19-cv-551 (N.D. Ill. Jan. 31, 2019) (unpublished) (granting *ex parte* Motion for Temporary Restraining Order).

### B.  Preventing Defendants from Fraudulently Transferring Assets is Appropriate

In order to preserve its right to an equitable accounting of Defendants' profits from sales of Counterfeit Grande Products, Grande requests an *ex parte* restraint of Defendants' assets. This *ex parte* restraint will ensure Defendants' compliance. If no restraint is issued, then Defendants

9

may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts where they could no longer be restrained. Upon information and belief, Defendants hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, thus rendering an accounting by Grande functionally meaningless. Furton Decl. at ¶¶ 5, 6.

Where a plaintiff's complaint seeks equitable relief, Courts have inherent authority to issue a prejudgment asset restraint. *Animale Grp. Inc. v. Sunny's Perfume Ins.*, 256 Fed. App'x 707, 709 (5th Cir. 2007). Moreover, Grande has demonstrated a strong likelihood of success on the merits of its claim for trademark infringement and counterfeiting, which would entitle Grande, "subject to the principles of equity, to recover . . . defendant's profits." *See* 15 U.S.C. § 1117(a)(1). Grande's Amended Complaint seeks, *inter alia*, an Order that the Defendants account for and pay to Grande all profits Defendants realized through their unlawful acts. Therefore, this Court has inherent equitable authority to grant Grande's request to freeze Defendants' assets now and thus preserve the relief Grande seeks.

In *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, a trademark infringement case, the court entered an asset restraining order against a counterfeiter. 2005 WL 3115892, *13 (N.D. Ill. Nov. 8, 2005). The *Lorillard* court recognized that it had explicit authority to order an asset restraint in lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the plaintiff sought a disgorgement of the defendant's profits (an equitable remedy), the court found that it had authority to freeze the defendant's assets. *Id.*

Grande seeks similar relief in this case, has satisfied the conditions necessary for a TRO, and has explained the likelihood that Defendants will hide or otherwise move their ill-gotten gains to offshore bank accounts unless their assets are frozen. Thus, an asset restraint is appropriate here.

10

### C. Grande is Entitled to Expedited Discovery

Courts have wide latitude in determining whether to grant a party's request for expedited discovery. *Vance v. Rumsfeld*, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007). The Federal Rules of Civil Procedure grant courts broad power over discovery, such that a court may permit expedited discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Grande seeks expedited discovery to identify Defendants and to reveal bank and payment system accounts that Defendants use for the counterfeit sales operations. The expedited discovery requested in Grande's Proposed TRO is limited to only what is essential to prevent further irreparable harm. Discovery of these financial accounts to that they can be frozen is necessary to ensure that Defendants cannot hide their unlawfully acquired profits from this Court's purview. *See, e.g. Monster Energy*, w 19-cv-551 (N.D. Ill. Jan. 31, 2019) (unpublished). Accordingly, Grande respectfully requests that the Court grant expedited discovery.

### V. NO MORE THAN A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The Court has discretion to require the party seeking an injunction to post security. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). In light of Grande's strong and unequivocal evidence of infringement, counterfeiting, and false designation of origin, Grande respectfully requests that if this Court requires Grande to post a bond, such bond should be no more than $10,000. *See, e.g.*, *Monster Energy*, No. 19-cv-551 (N.D. Ill. Jan. 31, 2019) (unpublished) (requiring $10,000 bond in connection with TRO granting similar relief).

### VI. CONCLUSION

Defendants' counterfeiting operations are causing irreparable harm to both Grande and consumers. Absent the *ex parte* relief Grande seeks, Defendants will continue offering for sale and selling Counterfeit Grande Products, which in turn will continue leading consumers to believe

11

erroneously that those counterfeit products have been manufactured by or emanate from Grande. In view of the foregoing and consistent with previous similar cases, Grande respectfully requests that this Court enter a TRO in the form submitted herewith.

| | | |
|---|---|---|
| Dated: November 2, 2020 | By: | /s/ Matthew T. Furton |
| | | Matthew T. Furton |
| | | David T. Van Der Laan |
| | | LOCKE LORD LLP |
| | | 111 South Wacker Drive |
| | | Chicago, Illinois 60606 |
| | | Tel: (312) 443-0445 |
| | | Fax: (312) 443-0336 |
| | | mfurton@lockelord.com |
| | | dave.vanderlaan@lockelord.com |
| | | |
| | | H. Straat Tenney (*pro hac vice* forthcoming) |
| | | LOCKE LORD LLP |
| | | 200 Vesey Street, 20th Floor |
| | | New York, New York 10281 |
| | | Tel: (212) 415-8600 |
| | | Fax: (212) 303-2754 |
| | | straat.tenney@lockelord.com |